UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| CARLENE L. FARMER, ) | |
| ) | |
| Plaintiff, ) | Civil No. 10-326-ART |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| DIXON ELECTRICAL SYSTEMS AND ) | **AND ORDER** |
| CONTRACTING, INC., et al., ) | |
| ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Carlene Farmer, a journeyman electrician, was fired for smoking at the construction site for a new Kentucky hospital. She was caught lighting up near the future ventilation system, a mandatory no-smoking area. Her employer, Dixon Electrical Systems and Contracting, Inc., would have preferred to keep Farmer as an employee. But the general contractor, Turner Construction Company, wanted her removed from the site. Since Dixon had no other jobs in the area, it was forced to terminate her. Farmer now claims that she suffered constant humiliation because the site used half portalets, and that she was fired because she complained about their use. The defendants are entitled to summary judgment because Farmer cannot show that her embarrassment or termination were the result of any legal wrong.

## BACKGROUND

This case begins with the construction of a new hospital at the University of Kentucky. Defendant Turner Construction Company was charged with constructing the new hospital, and Turner subcontracted with defendant Dixon Electrical Systems to perform

electrical work on the project. R. 1-2 at 4 ¶¶ 7, 9. Dixon then hired Farmer as an electrician. *Id.* at 4 ¶ 6. That employment relationship lasted slightly under six months, when Farmer was fired for smoking at the site. After her termination, Farmer filed an EEOC claim alleging a hostile work environment and retaliation.

### A. The Portalets

During construction of the hospital, male employees used portable urinals ("portalets").[1] *Id.* at 4 ¶¶ 10–11. Farmer and other female workers used the restrooms in Turner's trailer. R. 63 at 29. The portalets at the site looked like regular porta potties except that they were not enclosed on top and had an additional external trough in the back in which men could urinate. R. 59-5; R. 66 at 8. During her work with Dixon, Farmer often witnessed her male co-workers urinating in the portalets. R. 1-2 at ¶ 11. She also saw her coworkers genitals on up to six or seven occasions. Twice she accidentally saw a male coworker's genitals, and four or five times she might have caught a glimpse of genitalia out of the corner of her eye. R. 63 at 38–40. And, while Farmer could choose to look away from the portalets, she did have to work in their vicinity and walk by them while her male coworkers were urinating. *Id.* at 36–37. On several occasions, she caught male employees looking at her while they were urinating. *Id.* at 30.

Dixon's equal employment opportunity policy instructed employees to report any perceived discrimination to Dixon Safety Director Craig Pinkerton and to direct questions to Dixon's owner, Sean Dixon, or several other Dixon managers. *Id.* at 17. Similarly,

---

[1] Two other general contractors provided the restroom facilities for the hospital site. R. 66 at 9; R. 70 at 22.

employees were directed to report any sexual harassment to Pinkerton, Dixon, or specific managers. *Id.* But Farmer did not notify any of these individuals of her complaints. Instead, she told Turner Safety Coordinator Dave Busch that she had never seen this type of portalet before and that their use was humiliating to her and the male employees. *Id.* at 43. She also had several conversations about the portalets with Dixon employees. Farmer told foreman Anthony McDavid and Al Burton that she could not believe the site used the portalets, and that men had urinated in front of her. *Id*. She told her union business agent and Dixon foreman Randy Marshall that the portalets were embarrassing and humiliating. *Id.* at 42–46. And she complained to Dixon foreman Todd Gardner that she was getting "flashed" by male employees. *Id.* at 43.

### B. Farmer's Termination

Employees were not allowed to smoke inside the construction site. Initially, the site had a progressive discipline policy for employees who were caught smoking. R. 67 at 6. But in early November 2009, a university representative visited the site and reprimanded management for the evidence of cigarette smoking on the third floor, near the hospital's future ventilation system. R. 63 at 24–25; R. 66 at 14; R. 68 at 16. The representative worried that these systems would be contaminated by cigarette smoke. R. 63 at 24; R. 67 at 6. So Turner instituted an automatic termination policy for employees caught smoking on the third floor. R. 64 at 8; R. 67 at 6–7; R. 68 at 16–17. A few days later, Busch caught Farmer smoking on the third floor. R. 63 at 26–28. So Turner asked Dixon to permanently remove Farmer from the site. *Id.* Dixon did so, and then terminated Farmer because it had no other available jobs in the area. R. 78-6 at 2–3 ¶ 7.

Farmer then filed an EEOC charge alleging that the use of the portalets violated her civil rights. The EEOC investigated and issued a right to sue letter. R. 90-4. Farmer then filed this lawsuit alleging violations of her civil rights under Title VII and the Kentucky Civil Rights Act, intentional infliction of emotional distress, negligence, and negligent supervision and training. R. 21. She seeks compensatory and punitive damages. *Id.* The defendants now move for summary judgment. R. 59; R. 78.

## ANALYSIS

The defendants are entitled to summary judgment on a claim if they can show that there is no genuine dispute over the material facts underlying the claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must decide whether a reasonable juror could find for Farmer on each of her claims when all reasonable inferences from the evidence are drawn in her favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). But even this generous standard cannot save Farmer's claims from summary judgment.

### I. The Defendants Are Entitled to Summary Judgment on Farmer's Claim of Gender Discrimination

The Kentucky Civil Rights Act ("KCRA") is interpreted consistently with Title VII, so Farmer's state and federal civil rights claims can be analyzed together. *See Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 821 (Ky. 1992) (holding that the language of the KCRA generally "tracks the language of Title VII and, thus, should be interpreted consonant with federal [law]"); *see also Campell v. EQT Prod. Co.*, No. 10-cv-151-GFVT, 2011 WL 3475385, at *2 (E.D. Ky. Aug. 8, 2011) ("Courts interpret [the KCRA] consistent with Title VII . . . and look to federal case law construing Title VII when deciding cases

4

brought under the Kentucky statute."). Farmer believes that she was fired because of her gender and was subjected to a hostile work environment. She cannot demonstrate a genuine issue for trial on either claim.

### A. The Defendants Are Entitled to Summary Judgment on Farmer's Claim of Discriminatory Discharge

Farmer alleges that she was fired because of her gender. R. 21 at 6–8. To survive summary judgment, she must overcome the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, Farmer must make a prima facie showing of discrimination under Title VII. *Id.* at 802. Then, the burden shifts to the defendants to provide a "legitimate, nondiscriminatory reason" for firing Farmer. *Id.* at 802–03. Finally, the burden shifts back to Farmer to demonstrate that the reason the defendants offer is a pretext for prohibited discrimination. *Id.* at 804–05. Since Farmer cannot meet her burden at the first or third step, the defendants are entitled to summary judgment.

*Prima Facie Showing:* To make a prima facie showing of discrimination under Title VII, Farmer must show: (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for her position; and (4) that a similarly-situated employee outside the protected class was treated more favorably. *Dodd v. Donahoe*, 11-5509, __ F.3d __, 2013 WL 1694418, at *3 (6th Cir. Apr. 19, 2013) (citing, inter alia, *McDonnell Douglas Corp.*, 411 U.S. at 802). Farmer satisfies the first three

5

elements, but fails the fourth. There is no evidence in the record that either Dixon or Turner treated a similarly-situated male employee differently.[2]

Farmer attempts to show that similarly-situated male employees were treated differently by pointing to Dixon supervisors' track record with various smoking policies. R. 91 at 18–19. First, Farmer alleges that several male employees (in particular, a painter named Steve Beck and an unnamed male employee) were not fired after they were caught smoking. R. 63 at 58; R. 73 at 9. But these male employees were not similarly-situated to Farmer because they were not caught smoking on the third floor after the immediate termination policy went into effect. R. 67 at 7. Beck, for example, was caught smoking in the basement at a time when that violation led to progressive discipline rather than immediate termination.[3] R. 68 at 19–20; R. 70 at 15. Similarly, Burton's testimony that an unnamed male employee was simply told to put his cigarette out fails to identify either the time or place that the incident occurred. *See* R. 70 at 9. Second, Farmer alleges that the male employees who were fired for smoking were discharged after the immediate termination ban was extended to the entire workplace. R. 91 at 18; R. 78-3 at 3. But this fact actually hurts Farmer's claim. When male employees smoked in an area where there was a sanction of

---

[2] Turner also argues that it neither employed nor fired Farmer because she was a Dixon employee. R. 59-1 at 10–11 (citing, *inter alia*, *Boyd v. Furnari*, 933 F.2d 1007 (6th Cir. 1991) (affirming summary judgment for the contractor where plaintiff was employed by a subcontractor)). The plaintiff believes that agency law captures Turner in its net. R. 91 at 15–17. The Court need not resolve this question because all of Farmer's claims fail on other grounds.

[3] Burton testified that Beck was caught smoking "pretty much" once a week. R. 73 at 9. It is not clear whether Beck was caught smoking in the basement after the site-wide immediate termination policy went into effect. If so, then Farmer could point to Beck's termination as prima facie evidence of discrimination. But the Court need not consider arguments that Farmer has not developed. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). And, in any case, the defendants have demonstrated a legitimate non-discriminatory reason for Farmer's termination.

immediate termination, they were fired too. So, Farmer fails to identify any similarly-situated male employees were treated more favorably.

Furthermore, Farmer's own testimony contradicts her allegations. Farmer stated in her deposition that she was not fired because of her gender but "because [she] complained about the urinals so much." R. 63 at 46, 66. While Farmer hypothesized that if a man complained about the urinals he would not have been fired, there does not appear to be any evidence supporting this hypothesis. *Id.* at 66. And Farmer later conceded that Dixon did not even want to fire her. Dixon believed that Farmer was a good worker, tried to promote her, and would have preferred to keep her on the payroll. But when Turner wanted her removed from the site, Dixon had to fire Farmer because it had no other projects nearby. *Id.* at 60; R. 78-6. Moreover, Farmer testified that Dixon tried to address her concerns about the portalets. *Id.* at 63. So, no reasonable jury could conclude that similarly situated male employees received more favorable treatment than Farmer.

***Legitimate Non-Discriminatory Reason:*** The defendants have articulated a legitimate, non-discriminatory reason for Farmer's termination. *McDonnell Douglas Corp,* 411 U.S. at 802 (assuming employee can make a prima facie showing that she was discharged because of her gender, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination). Farmer violated the site's smoking ban when she lit a cigarette on the third floor. R. 63 at 57, 58, 62. Days before Farmer's termination, the site instituted an automatic termination policy for employees caught smoking on the third floor. R. 63 at 23–34, 27; R. 64 at 8; R. 67 at 6–7; R.

7

68 at 16–17. Consistent with the policy, when Farmer was caught with a cigarette on the third floor she was immediately removed from the site. R. 63 at 27.

*Demonstrating Pretext:* Since the defendants have provided a nondiscriminatory reason for Farmer's termination, the burden shifts back to Farmer to show that the reason is pretext for discrimination. *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 879 (6th Cir. 2013) (citing *McDonnell Douglas Corp*, 411 U.S. at 802). Farmer can establish pretext by demonstrating that the defendants' stated reasons (1) lack a basis in fact; (2) did not actually motivate the removal; or (3) were insufficient to motivate removal. *See Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 319 (6th Cir. 2007).

Farmer points to two facts to demonstrate pretext. First, she alleges that the defendants addressed the male employees' complaints about the portalets' cleanliness rather than her complaints that the portalets were humiliating. R. 90 at 17–18; R. 91 at 20. But this fact says nothing about the smoking ban's legitimacy as a reason for firing Farmer. It could not convince a reasonable jury that Farmer did not violate the smoking ban, that the violation was not the reason she was fired, or that it was insufficiently serious to merit termination. *See Tuttle*, 474 F.3d at 319. So the fact is insufficient to demonstrate pretext. Second, Farmer alleges that Randy Marshall, Dixon's general foreman, considered Farmer's complaints to be "crying" and worried about the litigiousness of female employees. R. 90 at 17–18; R. 91 at 20–21. Again, this fact does not implicate the smoking ban's legitimacy as a reason for firing Farmer. *See Tuttle*, 474 F.3d at 319. Furthermore, Farmer mischaracterizes the record. Marshall characterized the male employees' complaints about the portalets' cleanliness—not Farmer's complaints about their location—as "crying." R. 72 at 35.

Marshall explained that "there's not a lot we can do about the condition [of the portalets] . . . it's a construction job." *Id.* Also, it is not clear how biases about the litigiousness of female employees indicate that Farmer was fired for pretextual reasons. Thus, Farmer has no evidence that her violation of the smoking ban was a pretext for her termination. The defendants are entitled to summary judgment on Farmer's claims of discriminatory discharge.

> **B.   The Defendants Are Entitled to Summary Judgment for Farmer's Claim of Sexual Harassment**

Farmer's complaint also appears to allege that the defendants subjected her to sexual harassment arising from a hostile work environment. R. 21 at 6–8 (citing 42 U.S.C. § 2000e-2 and Ky. Rev. Stat. § 344.040); R. 91 at 21. This claim requires Farmer to establish that: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex; (4) the harassment unreasonably interfered with Farmer's work performance or created a hostile or offensive work environment that was severe and pervasive; and (5) the defendants knew or should have known of the charged sexual harassment and unreasonably failed to take prompt and appropriate corrective action. *See Clark v. United Parcel Serv., Inc.,* 400 F.3d 341, 347–48 (6th Cir. 2005); *Ammerman v. Bd. of Educ. of Nicholas Cnty.,* 30 S.W.3d 793, 798 (Ky. 2000). While the parties agree that Farmer is a member of a protected class, they dispute every other element of the hostile work environment showing. Since it is clear that Farmer was not treated differently because of her sex and the hospital site was not a hostile work environment, the Court need not decide if Farmer could prove the other elements of her

9

claim. *See Celotex Corp.*, 477 U.S. at 323–24 (defendants are entitled to summary judgment if they identify an element of a claim that the plaintiff cannot support with proper evidence).

Farmer found her male coworkers' use of the portalets humiliating and degrading. R. 63 at 36–39. But her embarrassment was not gender-specific. *See, e.g.*, *Baughman v. Battered Women, Inc.*, 211 F. App'x 432, 438 (6th Cir. 2006) ("Plaintiffs must show that but for their gender they would not have been harassed.") (emphasis omitted). First, the other female workers at the hospital site were not similarly offended by the portalets. R. 63 at 59. Second, many of Farmer's male coworkers were equally embarrassed by their use. *Id.* at 47. Farmer asserts that male employees were not subjected to the same hostile work environment because they are used to seeing men use the restroom. R. 91 at 23–24. But Farmer conceded that the male employees were not comfortable with the possibility that a female employee could watch them urinating or see their genitalia. R. 36 at 38–40. So there is simply no evidence that Farmer suffered any disadvantage because of her gender. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." (quotation omitted)).

Nor did the alleged harassment create a hostile work environment. A hostile work environment is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams v. Gen. Motors Corp.,* 187 F.3d 553, 560 (6th Cir. 1999) (quoting *Harris v. Forklift Syss.,* 510 U.S. 17, 21 (1993)). This is an objective standard, determined by "the frequency of the discriminatory conduct; its severity; whether it

10

is physically threatening or humiliating, . . . and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23.

Farmer's complaints do not rise to the necessary level of severity. Her accidental glimpses of male genitalia, her proximity to her urinating coworkers, and even her male coworkers facing her while they urinated are less severe than circumstances that courts have found not to constitute a hostile work environment. *See, e.g.*, *Clark., Inc.*, 400 F.3d at 351 (plaintiff claimed that the alleged harasser "told vulgar jokes, . . . twice placed his vibrating pager on her thigh as he passed her in the hall, and . . . pulled at her overalls after she told him she was wearing a thong"); *Stacy v. Shoney's, Inc.*, 142 F.3d 436, 1998 WL 165139, at *1–3 (6th Cir. 1998) (unpublished table decision) (male supervisor made sexually suggestive comments about the female plaintiff's appearance, touched her breast, and leered at plaintiff); *Adusumilli v. City of Chicago,* 164 F.3d 353, 357 (7th Cir. 1998) (male co-workers made sexual jokes about female plaintiff and stared at her breasts); *Durkin v. City of Chicago*, 199 F. Supp. 2d 836, 850 (N.D. Ill. 2002) (male police academy classmate exposed his penis to female plaintiff while urinating and said "suck this"). Farmer's minimal and accidental exposure to male genitalia, her proximity to her urinating coworkers, and the fact that some of her coworkers made eye-contact when Farmer saw them urinating did not permeate the construction site with *discriminatory* intimidation. *Harris*, 510 U.S. at 21. Nor were these events "severe or pervasive." *Id.*

Farmer may have been legitimately upset and humiliated by the portalets. And the working conditions were no doubt unpleasant for most of the workers involved. But not every legitimate workplace complaint can be translated into a legal cause of action. After all,

Title VII is not "a general civility code for the American workplace." *Oncale*, 523 U.S. at 80. The defendants are entitled to summary judgment on Farmer's sexual harassment claim.

## II. The Defendants Are Entitled to Summary Judgment on Farmer's Claim of Retaliatory Discharge

Farmer alleges that the defendants fired her in retaliation for her complaints about the portalets. R. 21 at 7–8 (citing 42 U.S.C. § 2000e-3(a) and Ky. Rev. Stat. § 344.280). To survive Dixon and Turner's motions for summary judgment on this claim, Farmer must have some evidence that: (1) she engaged in protected activity; (2) the defendant knew she exercised her civil rights; (3) the defendant took adverse employment action against Farmer; and (4) there was a causal connection between Farmer's protected activity and the adverse employment action. *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 468–69 (6th Cir. 2012) (citation omitted). Farmer offers no proof that she engaged in a protected activity or that her complaints caused her termination. Thus, summary judgment is appropriate.

Under Title VII and the KCRA, an employee engages in protected activity when she opposes an unlawful employment practice. *See* 42 U.S.C. 2000e-3(a); Ky. Rev. Stat. § 344.280; *see also Wasek*, 682 F.3d at 468–69 ("Under Title VII [and the KCRA], there are two types of protected activity: participation in a proceeding with the Equal Employment Opportunity Commission ("EEOC") and opposition to an apparent Title VII violation." (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989))). Farmer did not oppose an unlawful employment practice. She alleges that she opposed a hostile work environment when she complained about the site's use of the portalets. R. 21 at 7–8 (alleging retaliation for complaints that the defendants "caused her to be exposed to a

hostile work environment whereby she was forced to repeatedly witness her male co-workers urinating . . . ."). But the hospital construction site was not a hostile work environment. *See* Part I.B, *supra*. So Farmer did not oppose any unlawful employment practice.

Nor were Farmer's complaints to Turner and Dixon's management sufficiently specific to qualify as "opposition." *See Booker*, 879 F.2d at 1313 ("An employee may not invoke the protections of the [KCRA or Title VII] by making a vague charge of discrimination."). Farmer only asked Turner's representative "what's the deal with these urinals," and stated "I ain't never seen them before." R. 63 at 41. But a plaintiff must specifically object to discriminatory conduct based on her membership in a protected class. *See Balding-Margolis v. Cleveland Arcade*, 352 F. App'x 35, 45 (6th Cir. 2009) (finding that complaints about "the manner in which [the plaintiff's employer] conducted business" do not qualify); *see also Speck v. City of Memphis*, 370 F. App'x 622, 626 (6th Cir. 2010) ("Speck produced no evidence that she ever mentioned age discrimination in any of her complaints . . . She complained about being targeted for unfair treatment, but not about being targeted because of her age."). And Farmer complained to various Dixon employees that the portalets were embarrassing, that men had urinated in front of her, and that she had been accidentally flashed by male employees. *Id.* at 41–46. But she never specifically complained that the portalets were discriminatory or that she was being sexually harassed. *See Fox v. Eagle Distrib. Co., Inc.*, 510 F.3d 587, 591 (6th Cir. 2007) ("[I]n order for Fox's comments to Poplin to be deemed protected activity under the ADEA, Fox must have referenced alleged acts of age discrimination by Eagle."); *Willoughby v. Allstate Ins. Co.*, 104 F. App'x 528, 531 (6th Cir. 2004) (holding that the plaintiff's letter was not sufficiently specific where it

13

made only vague references to unhappiness among Caucasian employees). In fact, Farmer complained to at least one Dixon employee that both she and the male employees found the portalets embarrassing. R. 63 at 43. Thus, Farmer's complaints about the portalets cannot qualify as opposition to a protected employment practice. For this reason alone, the defendants are entitled to summary judgment.

Even if Farmer could demonstrate a material question of fact as to the other three elements of her retaliation claim, she could not prove causation. As described above, Farmer cannot demonstrate that the stated reasons for her termination were pretextual. *See* Part I.A. Thus, the defendants are entitled to summary judgment on Farmer's retaliation claim.

## III. The Defendants Are Entitled to Summary Judgment on Farmer's Claim of Intentional Infliction of Emotional Distress

Farmer believes that the defendants are liable for the intentional infliction of emotional distress ("IIED") because they failed to act on her complaints about the portalets. R. 90 at 30; R. 91 at 32. She is incorrect for two reasons. First, her claim is preempted under Kentucky law. Second, she cannot demonstrate the essential elements of this tort.

Under Kentucky law, a plaintiff cannot sue under both the KCRA and the common law tort of IIED. The KCRA provides a statutory cause of action for extreme emotional distress caused by discrimination. *See Wilson v. Lowe's Home Ctr.*, 75 S.W.3d 229, 239 (Ky. Ct. App. 2001) (quoting *McNeal v. Armour & Co.*, 660 S.W.2d 957, 958 (Ky. Ct. App. 1983)); *see also* Ky. Rev. Stat. § 344.020(1)(b) (protecting citizens' "interest in personal dignity and freedom from humiliation"). So when a plaintiff pursues claims under the KCRA and the common law theory of IIED, the former preempts the latter. *See Childers v.*

*Geile*, 367 S.W.3d 576, 581 (Ky. 2012) ("Since emotional distress as an element of damages follows the infliction of a personal injury, the *same* emotional distress cannot be the basis of recovery in a stand-alone tort."); *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985) ("Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." (citations omitted)); *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 286 (Ky. Ct. App. 2009).[4]

### IV. The Defendants Are Entitled to Summary Judgment for Negligence and Negligent Training and Supervision

Farmer claims that both Dixon and Turner's negligence resulted in her exposure to an unsafe and hostile workplace. R. 21 at 9–10; R. 91 at 35. And she alleges that the defendants did not appropriately train their employees to respond to claims of sexual harassment. R. 21 at 10; R. 90 at 33–34; R. 91 at 35. Neither claim survives because (1) the defendants' conduct did not violate a legal duty, and (2) Farmer has not suffered a compensable injury.

As an initial matter, both defendants argue that Farmer's claims are barred by Kentucky's Workers' Compensation Act ("KWCA"), which provides the exclusive remedy for employees injured by their employer's negligence. Ky. Rev. Stat. § 342.690; *see, e.g.*,

---

[4] Even if Farmer's IIED claim were not preempted, it would not survive summary judgment. To survive summary judgment, Farmer must demonstrate that she has some evidence that the defendants intentionally or recklessly violated the "generally accepted standards of decency and morality," and that their conduct caused Farmer severe emotional distress. *See Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 2–3 (Ky. 1990) (citation omitted). The conduct at issue in this case does not resemble the conduct found to support IIED liability. *See, e.g.*, *Craft v. Rice*, 671 S.W.2d 247, 248 (Ky. 1984) (defendant harassed the plaintiff "by keeping her under surveillance at work and home, telling her over the CB radio that he would put her husband in jail and driving so as to force her vehicle into an opposing lane of traffic"). Nor was Farmer's emotional distress sufficiently severe. *Benningfield v. Pettit Envtl., Inc.*, 183 S.W.3d 567, 572 (Ky. Ct. App. 2005) (IIED plaintiffs must suffer "substantially more than mere sorrow" or embarrassment (quotation omitted)).

*Shamrock Coal Co., Inc. v. Maricle,* 5 S.W.3d 130 (Ky. 1999). The KWCA's exclusivity provision covers both Dixon and Turner. *See Jacobs v. M.A. Mortenson Co.*, No. 2011-CA-000991-MR, 2013 WL 53874, at *2 (Ky. Ct. App. Jan. 4, 2013) ("Under the exclusive remedy provision, an 'employer' is broadly defined to include not only a worker's direct employer but also a contractor utilizing the worker's direct employer as a subcontractor."). There is a wrinkle, however, that no party addresses. Farmer's embarrassment, humiliation, and anguish do not qualify as injuries under the KWCA.[5] *See* Ky. Rev. Stat. § 342.0011(1); *McCowan v. Matsushita Appliance Co.*, 95 S.W.3d 30, 33 (Ky. 2002) (holding that the KWCA requires that mental changes "directly result from a physically traumatic event in order to be compensable"). Still, at least one court has found that the KWCA preempts hostile work environment claims for emotional damages. *See Tucker v. City of Princeton, Ky.*, 5:08-cv-00203-TBR, 2010 WL 2773390 (W.D. Ky. July 13, 2010). *But see Haggard v. Martin*, No. 3:01-cv-614-H, 2002 WL 753230, at *2 (W.D. Ky. Apr. 25, 2002) ("[T]he workers' compensation system exists to compensate physical injuries, not injuries that are primarily emotional or pecuniary. It follows logically that the KWCA should not bar actions for such injuries, because it offers no remedy for them." (citation omitted)). The Court need not determine whether Farmer's claims are barred by the KWCA because neither defendant is liable for negligence or negligent supervision.

---

[5] Of course, if Farmer's embarrassment and anguish caused physical changes, she could recover under the KWCA and her claim would be barred. *McCowan v. Matsushita Appliance Co.*, 95 S.W.3d 30, 33 (Ky. 2002).

*No Duty*: To demonstrate negligence, Farmer must show that the defendants owed her a duty, that they breached that duty, and that the breach caused Farmer's injuries. *See, e.g.*, *Osborne v. Keeney*, \_\_- S.W.3d \_\_, 2012 WL 6634129, at *9 (Ky. Dec. 20, 2012). Farmer claims that both defendants breached their duty to provide her with a safe and non-hostile work environment. R. 21 at 9–10; R. 91 at 35. She also alleges that the defendants failed to properly train and supervise their employees to respond to sexual harassment complaints. R. 90 at 33–34; R. 91 at 35. But, as noted above, the hospital construction cite was not a hostile work environment and Farmer was not subjected to sexual harassment. And there is no evidence indicating that the workplace was physically unsafe. In fact, Farmer admitted in her deposition that her claim was not about safety, but rather embarrassment and disrespect. R. 63 at 49–50. Perhaps Farmer believes that Turner and Dixon had a duty to make the workplace safe from incidents that would cause her embarrassment, humiliation, or anguish. But every workplace embarrassment is not a violation of a legal duty. *Osborne*, 2012 WL 6634129, at *9–10 ("[E]motional tranquility is rarely attained and [] some degree of emotional harm is an unfortunate reality of living in a modern society." (citation omitted)). Thus, Farmer's negligence claims fail because she has not demonstrated that the defendants violated any legal duty.

*Compensable Injury*: Farmer has not alleged a compensable injury. Farmer is suing for lost wages, humiliation, embarrassment, and mental anguish. R. 21 at 10–11. But Farmer's lost wages were the result of her termination, not her embarrassment. *See, e.g.*, R. 90 at 32–33; R. 91 at 34 (describing Farmer's injury as exposure to an unsafe and hostile work environment). After all, Farmer fully intended to stay with her job at the hospital site

17

despite her embarrassment from the portalets. R. 63 at 57. And Farmer's emotional injuries are not compensable under Kentucky's negligence law.

To ensure that a plaintiff's injuries are genuine, recovery for emotional harm for common law negligence claims is only available for severe emotional injuries.[6] *Osborne*, 2012 WL 6634129, at *9–10 (clarifying that physical impact or touching is no longer required to recover for negligence claims involving emotional distress (citations omitted)). Farmer does not have a severe emotional injury simply because she says so. A plaintiff's emotional injuries must be objectively serious, that is, so severe that a "reasonable person would no longer be expected to adequately manage it." *Id.* at *9 n.59 ("[I]ndividuals are well equipped to deal with the emotional stress generally experienced throughout day-to-day living. . . . Many factors may be considered, including, but not limited to, the intensity [and] duration of the harm, and the character or nature of the defendant's conduct."). The plaintiff's emotional injury must "significantly affect the plaintiff['s] everyday life or require significant treatment." *Id.* at *9 n.60. And plaintiffs alleging emotional injury must present expert proof to support their injuries. *Id.* at 9 ("[A] plaintiff claiming emotional distress damages must present expert medical or scientific proof to support the claimed injury or impairment.").

Farmer's emotional injuries are not sufficiently severe to be compensable under this standard. Farmer has not pointed the Court to evidence in the record that her emotional distress required significant treatment, nor has she presented expert evidence regarding the

---

[6] The *Osborne* court noted that there was "no good reason" not to apply this rule retroactively. *Osborne*, 2012 WL 6634129, at *10.

severity of her injuries. In fact, Farmer has filed a motion in limine asking the Court to exclude evidence of her medical history. R. 81 at 9. Thus, Farmer's general negligence, negligent supervision, and negligent training claims all fail.

## VI. Farmer Is Not Entitled To Punitive Damages

Turner and Dixon have also moved for summary judgment on Farmer's claim for punitive damages, which is set forth in Count VIII of the Amended Complaint. R. 21 at 11 ¶¶ 58−60. But a claim for punitive damages is not a separate cause of action. Rather, punitive damages are a potential remedy for an underlying cause of action. *See, e.g.*, *Dalton v. Animas Corp.*, No. 3:09-cv-354-H, 2012 WL 6675120, at *7 (W.D. Ky. Dec. 21, 2012). None of Farmer's underlying causes of action survive summary judgment. So Farmer is not entitled to punitive damages.

## CONCLUSION

It is therefore **ORDERED** that Turner Construction Company's motion for summary judgment, R. 59, is **GRANTED.** Dixon Electrical Systems and Contracting, Inc.'s motion for summary judgment, R. 78, is also **GRANTED.** All other pending motions are **DENIED AS MOOT**. The Court will enter an appropriate judgment. The Clerk **SHALL STRIKE** this case from the Court's active docket.

This the 31st day of May, 2013.



Signed By:
*Amul R. Thapar* AT
United States District Judge